United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERISBEL SIERRA-SANCHEZ,
Petitioner,
v.
CHRISTOPHER CHESTNUT, *et al.*,
Respondents.

Case No. 1:26-cv-04942 (EJD)

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 9

Before the Court is Petitioner Erisbel Sierra-Sanchez's Amended Petition for Writ of Habeas Corpus challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). For the reasons that follow, the Court finds that Petitioner is entitled to relief on his due process claim (Count Two), entitling him to release from custody.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner is a native of Cuba who entered the United States on March 9, 2022 by crossing the Laredo, Texas border from Mexico. Dkt. No. 9 ¶ 55; Dkt. No. 9-3 at 7. Following his entry, he was arrested by immigration authorities, briefly detained, and then released on his own recognizance on March 13, 2022. *See* Dkt. No. 9-3 at 15. He was also served with a Notice to Appear placing him in removal proceedings and setting his next hearing date for July 11, 2024. Dkt. No. 9-3 at 7. Following his release, Petitioner was granted work authorization, began lawfully working, and formed a committed relationship with his current partner. Dkt. No. 9 ¶ 58. Petitioner was re-detained by ICE on September 22, 2025 following an arrest for domestic violence. *Id.* ¶¶ 59, 64. However, by the time ICE took custody of Petitioner, the state prosecutor had already declined prosecution and

directed Petitioner's release from criminal custody. Dkt. No. 7-1 at 23.

Petitioner was ordered removed to Cuba while he was in custody on March 3, 2026 and has appealed that order to the Board of Immigration Appeals ("BIA"). As such, there is no final order of removal in place. *Id*. at 25, 29.

After five months of detention, Petitioner was provided a bond hearing after receiving habeas relief from a federal court in the Southern District of Florida. Dkt. No. 9 ¶¶ 73–74. The Immigration Judge ("IJ") denied release finding (1) that Petitioner was subject to discretionary detention under 8 U.S.C. § 1226(a) and must show that he "is not a threat to the community or a flight risk" in order to be released, and (2) that he was a flight risk in light of his removal order. Dkt. No. 12-1 at 2–3. Notably, the IJ did not deny release based on a finding of dangerousness or that Petitioner violated any of the terms of his prior release on his own recognizance.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner argues that he is entitled to release from custody because (1) his detention under 8 U.S.C. § 1225(b)(2) violates the Immigration and Nationality Act ("INA"), (2) his re-detention without notice or a pre-deprivation hearing violated his procedural due process rights under the

Fifth Amendment, and (3) the May 2026 bond hearing failed to cure any due process violation. *See* Dkt. No. 9 ¶¶ 85–108. Respondents oppose relief, arguing that Petitioner received due process through the May 2026 bond hearing and that he must exhaust his administrative remedies by appealing the bond denial to the BIA before seeking habeas relief. *See* Dkt. No. 11 at 1–2. Respondents further argue that Petitioner's detention is lawful under § 1225(b)(2) and that his arrest for domestic violence justifies his current detention. *Id*. at 1. The Court first addresses exhaustion and Respondents' statutory argument before turning to the merits.

**A. Exhaustion and Application of 8 U.S.C. § 1225(b)(2)**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). As the Ninth Circuit has stated:

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

To the extent Petitioner challenges the IJ's flight risk finding, the *Puga* factors favor requiring exhaustion. However, an exception applies to Petitioner's due process claim. "[C]ontrary to Respondents' contention that Petitioner has merely challenged the [immigration judge's] 'erroneous factual determinations and evidentiary errors,' [citation] the basis for the Petition is a claimed deprivation of constitutional due process." *Rufino Ligario Hernandez v. Mark Wayne Mullin, et al.*, No. 5:26-CV-00585-JAK-ADS, 2026 WL 846037, at * 7–8 (C.D. Cal. Mar. 24, 2026) (excusing prudential administrative exhaustion as futile). Specifically, that Petitioner was

entitled to process *before* he was arrested and detained to determine whether any changed circumstances since his prior release from immigration custody necessitated his re-detention. *See* Dkt. No. 9 ¶¶ 93–100. "Because this claim is not within the jurisdiction of the [Board of Immigration Appeals], requiring administrative exhaustion would be futile." *Rufino Ligario Hernandez*, 2026 WL 846037, at *8; *Yero v. U.S Gen. Att'y*, No. 1:26-CV-04312-DAD-JDP, 2026 WL 1707102, at *3 (E.D. Cal. June 12, 2026) (excusing exhaustion requirement where due process claim alleged Petitioner was entitled to notice and pre-deprivation process prior to his re-arrest by ICE).

The Court further rejects Respondents' argument that Petitioner's detention is mandatory under § 1225(b)(2). *See* Dkt. No. 11 at 1. This Court—as well as the majority throughout the Ninth Circuit—have already concluded that Section 1225(b)(2) does not apply to non-citizens like Petitioner who were previously released by the Government on their own recognizance. *See, e.g.*, *Ojeda v. Warden, California City*, No. 1:26-CV-03561 (AMO), 2026 WL 1475816 (E.D. Cal. May 26, 2026) (collecting cases); *Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, * 8–12 (N.D. Cal. Sept. 12, 2025); *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). "Such expansive interpretation of §1225(b) is unlawful as applied to non-citizens," like Petitioner, "who have been released by DHS on their own recognizance into the interior of the country." *Cornejo v. Andrews*, 823 F. Supp. 3d 1085, 1094 (E.D. Cal. 2026). As Petitioner may not be mandatorily detained under § 1225(b)(2), the Court next turns to Petitioner's due process claim.

**B. Due Process**

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460

United States District Court
Eastern District of California

(1989)).

**1. Liberty Interest**

Petitioner contends that his release on his own recognizance by immigration authorities in 2022, and then the nearly four years of freedom that followed, gave rise to a protected liberty interest. Dkt. No. 9 ¶¶ 93–94. The Court agrees.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see also*, *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025) ("Under federal regulation, DHS was authorized to release them under § 1226 only upon a determination that 'such release would not pose a danger to property or persons' and that they were 'likely to appear for any future proceeding.'"). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (internal quotation omitted).

Numerous courts have found that noncitizens previously released by immigration authorities on their own recognizance obtain a liberty interest in their continued freedom. *See, e.g.*, *Olivero*, 2026 WL 1162724, at *4; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). As Petitioner was released from DHS custody on his own recognizance in 2022, he maintains a protected liberty interest in

remaining out of custody.

**2. *Mathews* Factors**

As Petitioner has a protected liberty interest, the Court must next determine what process is due before the Government could terminate his liberty. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. First, Petitioner has a significant private interest in his continued release from custody. Petitioner was released by the Government and living at liberty for nearly four years prior to his re-detention. During that time, Petitioner received work authorization from USCIS, began working in the community, and developed community ties.

Second, the risk of erroneous deprivation is high when, as here, Petitioner's release was revoked without any showing of changed circumstances at the time of his arrest by ICE. *See Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). "While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). At Petitioner's belated bond hearing in May 2026, the IJ did not make any finding that circumstances had changed since the Government's initial decision to release him in 2022. Indeed, nothing in the record supports the

conclusion that Petitioner had become a flight risk—which is why the IJ denied bond—between his release in 2022 and his re-detention in 2025. And though Petitioner had been arrested shortly before his re-detention, all criminal charges were dropped *before* ICE chose to re-detain him. Indeed, the IJ did not consider dangerousness to be a reason for continuing to detain Petitioner. As civil immigration detention is "nonpunitive in purpose and effect[,]" it is only justified when a noncitizen presents a risk of flight or danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where the Government "fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing" demonstrating changed circumstances since the individual's prior detention and release, "the risk of erroneous deprivation is high." *Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding due process violation where Government failed to provide *pre*-deprivation process, even though Petitioner had received a belated bond hearing).

Finally, "the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Respondents have not provided the Court with any information regarding the burden, if any, that additional process may place on the Government. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but its interest in doing so without a hearing and making a finding of changed circumstances is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

As the Government failed make any showing of changed circumstances at a pre-deprivation hearing before re-detaining Petitioner, the revocation of his prior order of release was a violation of Petitioner's due process rights.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they

are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing at which the Government will bear the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community if not detained.

4. This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: October 2, 2026



EDWARD J. DAVILA
United States District Judge